Judge Robertson
delivered the opinion of the court.
This is an action of covenant instituted, in September, 1824, by John Harris, against the executors and heirs of Thomas Shirley, for an aileg- *23 ed breach by the testator, (Shirley) of a covenant, dated 28th March, 181b, whereby he agreed to convey to Harris, by deed of general warranty, with James Mitchell as his security, 200 acres of land Barren.county, whenever the conveyance should be demanded.
7’he pleadings are multifarious and’confused. But the issues and other facts in the record, although they present many nice and technical questions, may be resolved into two general propositions.
1st. Was Shirley guilty of a breach of his covenant?
2d. If there had been a breach of the covenant, was it waived by the acceptance, by Harris, of a deed executed conformably to the contract, after the breach?
If either of these propositions can be decided affirmatively, or if there be any thing, in the record, from which the jury were permitted to infer favora* bly to the appellees from either, the'judgment by the circuit court, in their favor, must be affirmed, otherwise it must be reversed. However informal or immaterial some of the issues and points made in-the case may be, there are issues well concluded, which embrace these two general propositions.
As to the first, it is shown, that, in 1816, Harris having removed to Indiana, left the title bond with one of Shirley’s neighbors, (Perry) for the purpose of having a deed procured; that in that year, Perry told Shirley more than once, that he had the bond and was authorized to obtain a deed, which he was ready to receive, but did not exhibit the bond, or any evidence of his authority. That Shirley replied, whenever the subject was mentioned to him by Perry, that he was ready and willing to make the deed at any moment; but the deed was not made, when, in July, 1817, Harris Came to Kentucky and demanded a deed; that when this demand was made, Shirley manifested a willingness to make the deed, and a day was appointed by him and Harris, for its execution; that Harris was ready at the appointed time and place, but Shirley did not attend; that after Harris *24 had left the place and returned to Perry’s, Shirley went to hitn, {on the evening of the day appointed for the conveyance,) and told him that he had been unable to procure the relinquishment of his wife’s dower soon enough to deliver the deed on that day* but would deliver it fully executed by himself, his wife and Mitchell, by sun rise next morning; but that Harris refused to wait any longer, and started for Indiana next morning, (July 12.)
Third person, to whom title bond, lor land, is delivered, to obtain deed, must shew, or offer to shew to obligor, the bond, or other authority, to receive deed or make demand, otherwise his demand will be insufficient.
Whether relinquishment of dower,must be obtained to discharge covenant to oonvey, with general warranty, is questiovcxala.
These facts do not prove a breach of the covenant, before July, 1817. There was no demand by Perry. If there had been one in form, it would have been insufficient, because he did not show or offer to show Shirley’s bond, nor any authority from Harris, to receive a deed or make a demand for it. There is no evidence that Shirley was notified of his agency. Pie was not bound, therefore, to make the deed on Perry’s applications.
And it seems that Shirley was guilty of no intentional delay, after Harris made the demand. It is very evident that Harris, was not desirous to obtain a deed. Shirley wade exertions to have a deed ready for delivery at the appointed time, but was delaj ed by an unavoidable disappointment in the procurement of his wife’s relinquishment. Harris was notified that this was the cause; and the only one, of his momentary disappointment, and did not inform Shirley that the relinquishment was not necessary, or would be dispensed with. It is fairly inferable from the facts, that Harris had insisted on the procurement of the relinquishment, and that if he had not done so, or had waived it, the deed would have been punctually made. Iq equity, therefore, he should be estopped from deriving advantage from this accident* If Shirley might have discharged himself by tendering a deed without his wife’s relinquishment, at law, he would not be excused by the erroneous opinion or requisition of Harris, or by bis own ignorance. If the tender of a deed, executed by himself alone, with a covenant of warranty against the claims of all persons, would not be sufficient, of course it was necessary to obtain his wife’s relinquishment. Wo shall not now decide whether it was necessary to procure his wife’s relinquishment. It is a “questio vexata.:! *25 As. therefore, Shirley had been allowed a reasonable time after the demand, to fulfil his contract, and had, within that time, failed to do so, there was a technical 'breach of his covenant, unless the delinquency ed from the fraud of Harris. There being no proof of this, Harris had a sheer legal right to an action for damages, and would have been entitled to recover, unless by an accord and satisfaction, either express or presumptive, tie is concluded.
aijoweS reasonable time after demand, t0 llis he fail to do is breach of his contract, un-^ted'ftm»0' fraud of ob-¡igee.
ecJ ana deposited for record, in W ven-rentin^out the land, call-ingithisown, to selfit^are circumstan-cos from SndThat dced.wosae-' cepted.
We are of opinion that'he is thus concluded, by the acceptance of a deed, which was made on the ‘21st July, 1017, and on the same day acknowledged, in the Barren county court, by Shirley and wife, and James Mitchell, and deposited to be recorded. Harris was not hound to accept this deed; and, therefore, its acknowledgement did not affect his right to sue for a breach of the covenant. But if he did accept the deed, he thereby surrendered his legal right to damages. Since \ 817, Harris has rented out the 200 acres of land which the deed of July, 1817, had conveyed to him; and since that lime, he has stated repeatedly, that the land belonged to him, and offered to sell it. In the early part of 1821, he examined the deed in the clerk’s office, and procured a copy.
These facts evince an acceptance of the deed, at least they tend so directly to create a presumption of his acceptance, that the jury were authorized to find for the appellees, on that issue alone.
Harris had a right to use the land without barring his right of action. But his pdssession and use of it, after he was notified of the conveyance, combined with his claim and recognition of title, and offer to sell, and with other corroborating circumstances, justify the inference that he had accepted the deed, and thcreby waived his right to damages. These facts are somewhat fortified by the delay in bringing this suit. The alleged breach was in 1816 or 1817, and Ibe suit was not brought until September, 1824. A party ought not to be indulged in such an experiment as this seems to have been intended to be, if there be any thing in the case, which, by a liberal construction, will warrant a verdict against him. And in such a ease, the facts should be construed with some rigor *26 against such a parly, and with liberality ¡ft favor of the resisting party. Harris has had the use of the land; has tried to sell it; has claimed it, for seven years. If in this time he could have made a profitable sale of it, or had ascertained that his purchase would b.e a productive one, he could have insisted that the deed passed to him the title. But if he ascertained that his purchase would eventuate disadvantageous^, and that it would be useful to him to seek the consideration and interest, he has studied to reserve to himself the legal-right to recover. Very slight evidence of acquiescence, after a knowledge that the deed was in the office, would be sufficient in such a case, to warrant a verdict against such an experimento!’.
Monroe, for appellant; Crittenden, for appellee,.
The evidence of acceptance of the deed^ in this case, is strong and conclusive, and, therefore, the jury were authorized to find the verdict on which judgmeut was rendered against Harris.
We perceive no error which should reverse this judgment. Nothing was dope or omitted, on the trial, which ought to have produced a different result; or which, by any reasonable supposition, would have done so. The pleas apply to a!! the counts in the declaration; and the issue on which the verdict is sustained, is well concluded and was material.
We perceive no essential error in any of the instructions or refusals to instruct by the court; nor any tiling erroneous or irregular, .in any of the opinions of the court, which could have contributed to the verdict.
Wherefore, the judgment of the circuit court is .affirmed.